UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADENTA GMBH et al.,

        Plaintiffs,

vs.

ORTHOARM, INC., et al.,

        Defendants.

Case No. 04-C-0905

## PLAINTIFFS' BRIEF IN OPPOSITION TO ORTHOARM'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Orthoarm filed its motion fifteen months after the complaint was filed and on the eve of trial not because the complaint fails to allege a basis for subject matter jurisdiction, but because Orthoarm wants desperately to avoid a decision on the merits declaring the '883 patent invalid. The primary basis for Orthoarm's motion is the complaint, and nothing prevented Orthoarm from challenging subject matter jurisdiction in lieu of filing an answer, or filing a motion at an earlier stage of the litigation. While it is true that subject matter jurisdiction can be challenged at any time, the Court should not countenance Orthoarm's ploy to avoid a day of reckoning. As explained below, when this action was commenced, plaintiffs had a reasonable apprehension of being sued for patent infringement based on a prior patent infringement suit alleging that Adenta's TIME® orthodontic bracket infringed the '883 patent and a June 2004 letter from American Orthodontics' attorney threatening that it "will pursue its available legal remedies" in the event plaintiffs stopped payment of royalties on US sales of its orthodontic brackets. Thus, when Adenta continued to sell the Evolution™ bracket without paying any royalties, it had a

~~reasonable apprehension of being sued for any available remedies, including patent infringement.~~
That is sufficient to establish an actual controversy and hence subject matter jurisdiction.

## I. FACTS[1]

In 2001, Orthoarm sued American for infringement the '883 patent arising out of American's sales of TIME® orthodontic brackets manufactured by plaintiff Adenta. That case was settled in 2002 on terms that included (1) American's payment of a 4% royalty on the sale of orthodontic brackets covered by the '883 patent, and (2) Orthoarm's assignment of the '883 patent to American subject to a reversion to Orthoarm if minimum royalty were not made.

Also in 2002, at the urging of American and in order to maintain their business relationship with American, Adenta, Heiser and Schendell (who were not parties to the Orthoarm/American litigation) entered an agreement with American whereby they agreed to pay one half of the 4% royalty American owed under the terms of its settlement with Orthoarm for sales of the TIME bracket (the "Royalty Sharing Agreement). At about the same time, American granted plaintiffs a separate license for plaintiffs to sell the EVOLUTION™ orthodontic bracket in consideration of a 4% royalty paid to American on U.S. EVOLUTION sales (the "Evolution License").

Plaintiffs subsequently determined that they had sufficient evidence to prove that the same TIME bracket that Orthoarm had charged in 2001 infringed the '883 patent had been on sale and in public use in the United States in May 1994, more than one year before the filing of the application leading to the '883 patent. Plaintiffs further determined that they could establish that John Voudouris (the named inventor of the '883 patent) had engaged in inequitable conduct during the prosecution of the '883 patent because, among other things, he had knowledge of the

---

[1] The facts set forth here are based on the allegations of the complaint and exhibits thereto.

~~1994 offer for sale and public use of the TIME bracket, but kept that knowledge from the United~~ States Patent Office.

In 2004, plaintiffs' attorney advised Orthoarm and American of their conclusions regarding the invalidity of the '883 patent and Voudouris' inequitable conduct, and also specifically advised American that they would make no further payments of royalties to American for US sales of either the TIME or EVOLUTION brackets. Plaintiffs received a response from American's lawyer, stating that plaintiffs' failure to pay royalties on either the Royalty Sharing Agreement or the Evolution License constituted a breach of those agreements, and further stating that if plaintiffs did not pay the required royalties, American would "pursue its available legal remedies." Adenta continued the sales of the EVOLUTION bracket in the United States without making any royalty payments to American, and in light of American's threat to pursue its available legal remedies, commenced this declaratory judgment seeking to have the '883 patent declared invalid and unenforceable and remove the threat of a possible patent infringement claim against the plaintiffs.

## II. ARGUMENT

### A. Legal Standard

The Declaratory Judgment Act, 28 U.S.C. § 2201, enables litigants to seek a declaration of their rights and grants district courts an additional procedural tool on which to base relief. The Act, however, does not independently confer federal jurisdiction; therefore subject matter jurisdiction must be independently established. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir.1995). Section 2201 incorporates the general Article III requirement of an actual "case or controversy" between the parties. *See Nationwide*, 52 F.3d at 692, *C.R. Bard, Inc. v. Schwartz*; 716 F.2d 874, 879 (Fed. Cir 1983). In the context of declaratory actions relating to

~~patents, the test for determining whether an actual case or controversy exists is two-pronged.~~
First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or product or have prepared to produce that device or product. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398-99, 222 U.S.P.Q. 943, 949 (Fed.Cir.1984). Orthoarm does not even question that the second prong is satisfied, but focuses its argument on the first.

To constitute an actual controversy, the plaintiffs seeking a declaratory judgment must establish by a preponderance of the evidence that it had a reasonable apprehension that it would be sued. *Goodyear Tire & Rubber Co. v. Releasomers Inc.*, 824 F.2d 953, 955 (Fed.Cir.1987). The test is an objective one, which in this case focuses on whether the American's conduct rose to a level sufficient to indicate an intent to enforce the '883 patent. *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed.Cir.1992). Whether an "actual controversy" exists is based on the totality of the circumstances. *Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed.Cir.1993). Only the actions of American known to the plaintiffs at the time the action is commenced can be considered in determining whether such a threat exists. *Norfolk S. R.R. Co. v. Guthrie*, 233 F.3d 532, 534-35 (7th Cir.2000); *West Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1297 (Fed.Cir.1992).

When the patentee/declaratory defendant has "expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988). In the absence of an express charge of infringement, however, the Court must look to the "totality of the circumstances." *Arrowhead*, 846 F.2d 731, 736 (Fed.Cir.1988). The Federal Circuit has explained that this prong

~~of the test "looks to defendant's conduct ... [which] must be such as to indicate defendant's intent~~ to enforce its patent." *Id.*

Merely omitting an express charge of patent infringement from communications with the declaratory plaintiff will not insulate a patent owner from a declaratory judgment action, where the intent to enforce its patent is clear from the balance of the communications and the surrounding circumstances. For example, the Federal Circuit in *Arrowhead* specifically acknowledged often used "subtleties in lawyer language." *Id.*

> The district court's requirement that Ecolochem's letters to Arrowhead specifically charge Arrowhead's process as an infringement is a misapplication of the law respecting a reasonable apprehension. A specific charge would have eliminated the need to consider "all the circumstances" and a requirement for communicating a specific charge to Arrowhead would free Ecolochem to employ forever its thinly veiled threat and its patent-enforcement-by-letter tactics attempted here, thereby defeating the very purpose of the Act… That its letters skillfully skirted an express charge of infringement, and the district court's characterization of Ecolochem's threat as "conditional," are in this case meaningless.

*Id.* at 737-38 (Fed.Cir.1988).

**B. Orthoarm's Prior Suit Alleging Infringement of the '883 Patent and American's Threat To Pursue Its Available Legal Remedies Created a Reasonable Apprehension of Suit on the Part of the Plaintiffs[2]**

Whether the plaintiffs had a reasonable apprehension of being sued for patent infringement in September 2004 when this action was filed must be determined on the basis of the totality of the circumstances and facts known to the plaintiffs at that time. The relevant circumstances include:

---

[2] Plaintiffs disagree with Orthoarm's conclusion that there is no justiciable controversy as to American's obligations under its license agreement with Orthoarm or as to Adenta's obligations under its agreements with American. Those controversies, however, do not arise under federal law and therefore concededly do not give rise to subject matter jurisdiction.

- ~~Adenta's TIME bracket had been the subject of a 2001 lawsuit alleging~~ infringement of the '883 patent;
- American had advised plaintiffs that the nonpayment of royalties would be considered a breach of the Evolution License
- American had advised plaintiffs that it would pursue its available legal remedies in the event royalties were not paid;
- The plaintiffs were in material breach of the Evolution License with American because Adenta was selling the EVLOUTION bracket in the United States without paying the royalties due under the license;
- Claus Schendell testified that he believed American's threat to pursue its available remedies included the prospect of a patent infringement suit (Schendell Dep., pp.187, l. 12 – 188, l. 24; Fredrickson Dec., Ex. A);
- Lee Tuneberg of American has testified that if his lawyers advised that a patent infringement claim was among its available legal remedies, it would be included in any legal action taken against plaintiffs (Tuneberg Dep., pp. 113, l. 22 – 115, l. 1; Fredrickson Dec., Ex. B).[3]

The Federal Circuit has recognized that a patent licensee in material breach of a license agreement could be the subject of an infringement suit "at any time." *Bard*, 716 F.2d at 881; *see also Gen-Probe Inc. v. Vysis, Inc.*,359 F.3d 1376, 1381 (Fed. Cir. 2004) ("material breach granted Schwartz the power to file an infringement lawsuit against Bard at any time," distinguishing *Bard* from the case before it). Thus, a patent infringement claim alleging that the EVOLUTION bracket infringed the '883 patent was clearly within American's quiver of available legal remedies in mid 2004, and the plaintiffs had no reason to believe that American would refrain from asserting such a claim when this action was filed. Orthoarm's failure to recognize that a patent licensee in material breach of its license is exposed to a claim of patent infringement is no basis for concluding that plaintiffs did not have a reasonable apprehension of

---

[3] This admittedly was not known to the plaintiffs when this suit was filed. Yet "[a]lthough it is the situation at the time suit was filed that establishes the existence vel non of an actual controversy, subsequent events can reinforce the correctness of the conclusion." *BP Chem Ltd.,* 4 F.3d at 980

being sued for patent infringement (among other things) when this action was filed, particularly in light of Mr. Schendell's testimony that he understood American's available legal rights at the time to include a claim for patent infringement. The fundamental problem with Orthoarm's motion is just this failure to recognize that plaintiffs were exposed to a claim of patent infringement, which resulted in the erroneous premise that American had only threatened to sue plaintiffs for breach of contract. As explained above, there is no support for Orthoarm's conclusion that American's remedies were limited to breach of contract.

The fact that American has not filed an infringement counterclaim in response to this declaratory judgment action says nothing about the reasonableness of the plaintiffs' apprehension of being sued in mid—2004. Indeed, in *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004), the Federal Circuit explained that the district court should not have given any weight to the fact that the patent owner failed or refused to assert a counterclaim for patent infringement in its determination whether subject matter jurisdiction had been established. Simply put, American's action or inaction after this suit was filed is not material to determining whether the circumstances known to the plaintiffs prior to filing gave rise to a reasonable apprehension of being sued for infringement.

### C. It Would Be an Abuse of the Court's Discretion To Dismiss the Action

Although the law grants district courts the discretion to decline to enter a declaratory judgment in certain circumstances even though there is an actual controversy between the parties, *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996), it would be an abuse of that discretion to dismiss this declaratory judgment action at this point in the proceedings on the eve of trial. In *Capo* the Federal Circuit reversed the district court's discretionary dismissal of a

declaratory judgment action as an abuse of the court's discretion, stressing the obligation of the district court to hear declaratory judgment actions involving patents:

> There must be a sound basis for refusing to adjudicate an actual controversy, for the policy of the Act is to enable resolution of active disputes. "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir.1993).

387 F.3d at 1357-58. In this case, Orthoarm has waited far too long to invoke the Court's discretion to dismiss a declaratory judgment action over which it properly has subject matter jurisdiction. Doing so now would result in squandering resources that the plaintiffs and the Court have expended to prepare for trial. Nothing prevented Orthoarm from filing its motion months ago. The motion is not dependent on deposition testimony, but is principally based on the pleadings. Even if some discovery were needed by Orthoarm, there is no justification for waiting until literally the eleventh hour to finally file the motion. It is the Court's responsibility to resolve the present dispute, and refusing to do so at this late stage would be an abuse of the Court's discretion.

## III. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that Orthoarm's motion to dismiss the action for lack of subject matter jurisdiction be denied.

January 13, 2006

*s/ John P. Fredrickson*
John P. Fredrickson
*Attorneys for the plaintiffs*

Boyle Fredrickson Newholm Stein & Gratz, SC
250 E. Wisconsin Ave., Ste. 1030
Milwaukee, WI 53202
Telephone: 414-225-9755
Facsimile: 414-225-9753

# CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2006, I electronically filed the following documents with the Clerk of the Court using the ECF system:

1. Plaintiff's Brief in Opposition to Orthoarm's Motion To Dismiss for Lack of Subject Matter Jurisdiction
2. Declaration of John P. Fredrickson

The ECF system will send notification of the filing to S. Edward Sarskas, counsel for Orthoarm Inc., and William Duffin, counsel for American Orthodontics Corporation.

*s/ John P. Fredrickson*
John P. Fredrickson
*Attorneys for the plaintiffs*

Boyle Fredrickson Newholm Stein & Gratz S.C.
250 E. Wisconsin Avenue, Suite 1030
Milwaukee, WI 53202
Telephone: (414) 225-9755
Facsimile: (414) 225-9753